UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JAMAR MASON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:17-CV-727-PPS-MGG |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

OPINION AND ORDER

Jamar Mason, a prisoner without a lawyer, filed a habeas corpus petition challenging three related disciplinary proceedings—cases CIC 16-09-0001, CIC 16-09-0002, and CIC 16-09-0003—held at the Correctional Industrial Facility on September 12, 2016. ECF 1 at 1-3, 1-1 at 1-2. The convictions Mason challenges in his petition result from his participation in a brutal fight at the prison on July 16, 2016, involving twelve offenders. ECF 14 at 1-7. Investigator John Poer along with other prison officials were charged with compiling a confidential case file and preparing a report of investigation detailing the roles the twelve participants had in the fight. *Id*. Poer's report is based on interviews with many offenders and his review of security video footage taken from a number of different vantage points. *Id*. There were four offenders—Jamar Mason, Ramar Daniels, Joseph Mangold, and Darrell Hix—who played key roles in the incident. *Id*. Mason was charged with and found guilty of multiple offenses for which he received significant sanctions.

**A.      Background**

**(1)**   *Case CIC 16-09-0001*

On August 31, 2016, Poer wrote a conduct report in case CIC 16-09-0001, charging Mason with battery/assault and inflicting serious bodily injury to Offender Darrell Hix in violation of Indiana Department of Correction (IDOC) offense A-102. ECF 12-1 at 1. Specifically, IDOC offense A-102 prohibits inmates from "[c]ommitting battery/assault upon another person with a weapon (including the throwing of body fluids or waste on another person) or inflicting serious bodily injury." Indiana Department of Correction, Adult Disciplinary Process: Appendix I. http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf.

The Conduct Report in CIC 16-09-0001 charged Mason as follows:

> On July 16, 2016 offender Mason, Jamar 996237 13B-4A was involved in an assault involving multiple offenders on the E 1/3 side. An investigation was conducted to determine the cause of the assault and identify who participated in the assault. At 8:47 PM offender Mason is seen on camera picking offender Darrell Hix 125295 up off of his feet and slams his body on the floor. Offender Mason then stands over Hix and strikes Hix with both fists multiple times. Offender Hix received numerous lacerations requiring medical attention from the assault.

ECF 12-1 at 1.

After being notified of the charge, Mason pled not guilty and a lay advocate was provided for him. ECF 12-3 at 1, 12-4 at 1. Mason requested one witness—Offender Hix—but his request was denied because Hix was a victim of the assault. ECF 12-3 at 1. At the hearing on September 12, 2016, Mason made the following statement:

> They said [an] assault is with a weapon/fluids, serious injury. I didn't do any of that. I went upstairs to room 12. [Offender] Mangold swung on Texas. Hix swung on me. I didn't swing, I took him down. Mangold swung on me w/broomstick and hit me on back. I ended up in room 17.

ECF 12-5 at 1. The Disciplinary Hearing Officer (DHO) found Mason guilty of assaulting and battering Hix and causing him serious bodily injury based on staff reports, Mason's statement, and information contained in the confidential case file. *Id*. As a result, the DHO sanctioned him with the loss of 365 days earned credit time and a one-step demotion in credit class. *Id*. However, on February 20, 2018, the Final Reviewing Authority reduced the loss of earned credit time from 365 days to 180 days. ECF 12-8 at 2. Thus, 185 days of lost earned credit time was returned to Mason. *Id*.

**(2)** *Case CIC 16-09-0002*

On August 31, 2016, Poer wrote a second conduct report in case CIC 16-09-0002, charging Mason with conspiring to commit battery/assault of Offender Mangold in violation of IDOC offenses B-212 and B-240. ECF 12-9 at 1. Specifically, IDOC offense B-212 prohibits inmates from "[c]ommitting a battery/assault upon another person without a weapon or inflicting bodily injury." Appendix I, *supra*. IDOC offense B-240 prohibits inmates from "[a]ttempting to commit any Class B offense; aiding, commanding, inducing, counseling, procuring or conspiring with another person to commit any Class B offense." *Id*.

The Conduct Report in CIC 16-09-0002 charged Mason as follows:

> On July 16, 2016 offender Mason, Jamar 996237 13B-4A was involved in an assault involving multiple offenders on the E 1/3 side. An investigation was conducted to determine the cause of the assault and identify who

3

> participated in the assault. At 8:41 PM offender Mason entered cell 5-1E with two other offenders and assaulted offender Joseph Mangold 148204. Offender Mangold was assigned to 5A-1E at the date/time of the assault. Refer to Confidential Case File 16-CIC-0033 for additional details.

ECF 12-9 at 1.

After being notified of the charge, Mason pled not guilty and a lay advocate was provided for him. ECF 12-10 at 1, 12-11 at 1. Mason requested a number of witnesses. ECF 12-10 at 1. He requested Offender Mangold as a witness but his request was denied because Mangold was a victim of the assault. *Id.* He also requested Offenders Otis Young and Ramar Daniels as witnesses. *Id.* Mason also seemed to initially request the prison security footage of the incident but the word "video" was crossed out on the screening report and instead states "see confidential case file." *Id.*

Offenders Young and Daniels provided written statements on Mason's behalf. ECF 12-12 at 1, 12-13 at 1. Here, Mason asked each witness to provide a statement in response to his question: "Did I assault Offender Mangold?" *Id.* Offender Young responded: "No, I was present the whole time and never s[aw] Jamar put a hand on him." ECF 12-12 at 1. Offender Daniels responded to Mason's question stating:

> This ofd. never assaulted, hit, or touched Ofd. Mangold at any time in my presence. Ofd. Mangold was never assaulted in that room, it's all in I and I [Internal Affairs] mind. They [are] just making stuff up cause they want innocent people to be found guilty.

ECF 12-13 at 1.

At the disciplinary hearing held on September 12, 2016, Mason stated he should have only been charged with offenses C-362 and C-372—conspiring to commit a fight—

because Mangold was not physically harmed. ECF 12-14 at 1. Nevertheless, the DHO found Mason guilty of conspiring to assault and beat up Mangold in violation of offenses B-212 and B-240 on the basis of staff reports, Mason's statement, and the information contained in the confidential case file. *Id*. As a result, he was sanctioned with the loss of 90 days earned credit time and a one-step demotion in credit class. *Id*.

**(3)    *Case CIC 16-09-0003***

On August 31, 2016, Poer wrote a third conduct report in case CIC 16-09-0003, charging Mason with conspiring to commit theft in violation of offenses B-215 and B-240. ECF 12-18 at 1. Specifically, IDOC offense B-215 prohibits inmates from "[u]nauthorized possession, destruction, alteration, damage to, or theft of State property or property belonging to another." Appendix I, *supra*. As discussed, IDOC offense B-240 prohibits inmates from attempting to commit any Class B offense. *Id*.

The Conduct Report in case CIC 16-09-0003 charged Mason as follows:

> On July 16, 2016 offender Mason, Jamar 996237 13B-4A was involved in an assault involving multiple offenders on the E 1/3 side. An investigation was conducted to determine the cause of the assault and identify who participated in the assault. At 8:42 PM offender Mason exited cell 5-1E with two other offenders and was in possession of offender Mangold's flat screen TV. Refer to Confidential Case File 16-CIC-0033 for additional details.

ECF 12-18 at 1.

After being notified of the charge, Mason pled not guilty and a lay advocate was provided. ECF 12-20 at 1, 12-21 at 1. Mason did not request any witnesses, however, he

5

requested the video footage of the incident. ECF 12-20 at 1. The DHO reviewed the footage and provided the following written summary:

> I, Officer Cooke #281, did review the camera for case # CIC 16-09-0003. The video clearly shows Offender Mason, Jamar 996237 exit cell number 5-1E at 8:43 pm carrying a tub in his right hand and a flat screen TV in his left hand. Offender Mason then walks into the right side of the bathroom, exits the left side and walks up the stairs with the TV still in his left hand at 8:43:38.

ECF 12-22 at 1.

At the hearing on September 12, 2016, Mason told the DHO that he should have been charged with a lesser offense—C-353—which prohibits inmates from removing or relocating another offender's personal property. ECF 12-23 at 1. In support of his position, he states he "just removed [the television] from room 5, not . . . . room 4" and "they lied [and he was] relocated" to another room. *Id*. The DHO found Mason guilty of conspiring to commit theft in violation of offenses B-215 and B-240, after considering the staff reports, video footage, and Mason's statement. *Id*. In relying on the video footage, the DHO stated: "Upon review of [the] video, [Mason] clearly takes [the] TV and a small tote from [Mangold's] room." *Id*. As a result of the DHO's guilty finding, Mason was sanctioned with the loss of 90 days earned credit time. *Id*.

**(4)** *Video Footage*

The confidential file contains the following video footage summary documenting Mason's involvement in the July 16, 2016 prison fight:

- 8:40 PM: Offender Jamar Mason 996237 (black offender with dreads) and offender Ramar Daniels 104542 (black with bald head) enter cell 5-1E. Offender Mason is carrying a laundry bag. Offender

6

Otis Young 188201 can been [sic] seen standing around near cell 5-1E as if he is keeping watch. Mason enters and exits 5-1E and 4-1E as if he is moving something from one cell to the other.

- 8:41 PM: Offender Mangold comes to cell 5-1E (his assigned cell) and confronts the offenders who are in his cell. There appears to be a moment of shoving between Mangold and Mason before the three of them enter cell 5-1E. Offender Young enters 5-1E and closes the cell door behind him. Offender Keith Anderson 248418 keeps watch from outside cell 5-1E.

- 8:42 PM: The door opens and offenders Young, Daniels and Mason exit cell 5-1E. Mason closes the cell door and appears to lock the barrel bolt to keep Mangold locked in the cell. Mason appears to be speaking to Mangold through the cell door before walking into cell 4-1E.

- Mason comes out of 4-1E multiple times to talk to Mangold who is still locked in 5-1E.

- 8:43 PM: Offender Mason exits cell 4-1E carrying a plastic tub in his right hand and a flat screen TV in his left hand. He walks behind the stairs and around range 1 to the far right stairs. Mason goes up the stairs and enters cell 27-3D (Otis Young's cell) with the items he was carrying.

- 8:45 PM: Offenders Mason and Daniels go to 5-1E and talk to offender Mangold through the door. Mangold is still locked in cell 5-1E with the barrel bolt and cannot get out. As they walk away from 5-1E offender Young joins them.

- 8:46 PM: A passerby unlocks the barrel bolt for Mangold and he is able to exit cell 5-1E. Offender Mangold walks across the dayroom to the middle stairs and speaks with offender Jarred Parton 252624. He then walks to cell 27-1E. The video corroborates the statement given by Mangold in interview.

- 8:46:43 PM: Mangold exits 27-1E and goes up the far right stairs. When he reaches the 3 range he turns left and begins walking toward the upper left bathroom. As he does, offender Daniels and offender Young exit cell 27-3E and follow Mangold through the upper right bathroom. Offenders in the dayroom are all looking up

7

- toward the three range where Mangold, Daniels and Young are walking indicating they are aware something is about to happen.

- 8:47 PM: Mangold exits the upper right bathroom and continues to cell 13-3E. Offenders Daniels and Young stop at the bathroom door looking around and watching Mangold go into 13-3E.

- 8:47:17 PM: Offender Daniels and Young walk across the range to cell 13-3E. As they do offender Mason runs up the middle stairs to join them at 13-3E. All of the dayroom offenders are now looking toward cell 13-3E and several offenders are slowing [sic] moving toward that location.

- 8:47:25 PM: Offender Mangold exits 13-3E throwing punches at Offender Daniels. The two of them begin fighting. Offender Hix exits 13-3E and begins fighting with offender Mason.

  . . .

- 8:47:39 PM: Offender Mangold grabs a broom from an offender standing near the fight. He begins to assault offender Mason. Offender Mason is fighting with offender Hix in the upstairs corner and offender Mangold was attempting to assist Hix.

  . . .

- 8:47:55 PM: Offenders appear to be separating and mingling into the crowd as staff are becoming aware that a fight was in progress. No signal was ever called on the radio.

ECF 12 at 4-6, 14 at 2-4.

**B.     Standard of Review**

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with

8

institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

**C.     Analysis**

**(1)     *Sufficiency of Evidence***

In his petition, Mason argues that the DHO did not have sufficient evidence to find him guilty of committing all three offenses. ECF 1 at 2-3. Contrary to Mason's contention, however, the court's review of the record shows there was sufficient evidence for the DHO to find Mason guilty of the three charged offenses—assault and battery of Hix, conspiring to assault and batter Mangold, and conspiring to steal Mangold's television and personal property. A conduct report alone can be enough to support a finding of guilt. *McPherson*, 188 F.3d at 786. Such is the case here. In this case, the three conduct reports stem from Poer's internal affairs investigation of the July 16, 2016, fight in which he and other prison investigators documented Mason's participation in the brutal assaults of Mangold and Hix. ECF 14 at 1-7. Poer's report contains interviews with multiple offenders who recounted the events from that date as well as a summary of the relevant video footage of Mason's participation in the fight. *Id*. Poer determined the fight was the result of events that occurred prior to July 16, 2016, and one offender in particular—Mangold—was targeted by three offenders, including Mason. *Id*.

The details of the two assaults and theft of Mangold's property are as follows. In case CIC 16-09-0002, Poer detailed in the conduct report the fact that Mason and two other offenders entered Mangold's cell, 5-1E, and assaulted him, causing severe injuries to Mangold's head and neck. ECF 12-9 at 1, 14 at 1, 7. These events were viewed on the prison's security video footage and documented Mason's participation in the assault on Mangold. ECF 12-9 at 1, 14 at 2. Poer also detailed in his report that Mangold

10

specifically told him that Mason and two other offenders beat him up in his cell. ECF 14 at 2. In addition to Poer's report and the video footage, photographs of Mangold's severe head and neck injuries provide support for the brutal attack. ECF 16. In case CIC 16-09-0003, Poer reported in another conduct report the fact that, after Mangold was assaulted in his cell, Mason and two offenders were viewed on video footage exiting the cell with Mason carrying a tub in his right hand and Mangold's flat screen television in his left hand. ECF 12-18 at 1, 12-22 at 1. The record contains a photograph of the flat screen television Mason took from Mangold's cell. ECF 12-19 at 1. In case CIC 16-09-001, Poer detailed in a third conduct report that, after Mangold's assault and his attempt to solicit help from Hix, Mason was viewed on video footage picking Hix up off his feet and slamming him down onto the floor outside of cell 13-3E. ECF 12-1 at 1, 14 at 1, 7. And Mason was also observed standing over Hix and striking multiple blows to him with both fists. *Id*. As a result, Hix was injured and received medical attention. *Id*.

Given Poer's three detailed conduct reports, internal affairs investigation, and prison video footage which identified Mason as one of the key players in the assault of Mangold and Hix, as well as the theft of Mangold's television, there was more than "some evidence" for the DHO to find Mason guilty of violating the charged offenses. While Mason claims he never assaulted Mangold or Hix and only fought with them in self-defense, the DHO was not required to credit or believe his story. *McPherson*, 188 F.3d at 786 (the court is not "required to conduct an examination of the entire record,

independently assess witness credibility, or weigh the evidence."). Nor was the DHO required to believe that Mason was simply relocating Mangold's television from one room to another rather than taking it for his own use. Moreover, to the extent Mason claims he should have only been charged with B and C level offenses, there is ample evidence to support the charged offenses as Mangold and Hix were seriously injured and required medical treatment. ECF 1 at 2-3, 12-1 at 1, 12-2 at 1-2, 12-9 at 1, 14 at 1. Because the DHO's findings were neither arbitrary nor unreasonable in light of the facts presented in this case, Mason has not identified a basis for granting habeas corpus relief.[1]

**(2)** *Witness Statements*

In cases CIC 16-09-0001 and CIC 16-09-0002, Mason argues his due process rights were violated because his requests for witness statements from Mangold and Hix were improperly denied. ECF 1 at 2-3. The DHO denied Mason's request for these statements because Mangold and Hix were victims of the assault. ECF 12-3 at 1, 12-10 at 1. A prisoner has a right to call witnesses and present documentary evidence in a prison disciplinary proceeding. *Wolff*, 418 U.S. at 566. However, a prisoner's right to present evidence is qualified because a hearing officer may deny witness or evidence requests that threaten institutional goals or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 678 (7th Cir. 2003).

---

[1] In case CIC 16-09-0001, Mason also argued that the 365-day deprivation of earned credit time exceeded the six-month limit provided by IDOC policy. ECF 1 at 2. However, this ground is now moot because, on February 20, 2018, the Final Reviewing Authority reduced the loss of earned credit time from 365 days to 180 days. ECF 12-8 at 2. Thus, 185 days of lost earned credit time was returned to Mason. *Id*.

While written statements specifically in response to Mason's request were not obtained by the DHO, Mangold and Hix were interviewed by Poer and other prison officials and their statements are included in the confidential case file. ECF 14 at 1-2. The DHO reviewed the file—including Hix's and Mangold's interview statements—and was not required to disclose the file to Mason. *White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001) (stating that there is no denial of opportunity to review and present evidence where the conduct adjustment board reviewed the evidence in question as part of the case file). As such, Hix's and Mangold's statements were part of the evidence considered by the DHO—just as Mason had requested. The issue of Mason's participation in the assaults on Mangold and Hix were discussed during the interviews with Poer and prison officials. Therefore, any additional statements obtained in response to Mason's request would have been repetitive and not required. *Piggie*, 342 F.3d at 678.

Furthermore, the DHO's failure to obtain statements from Mangold and Hix for the purpose of the disciplinary hearing did not violate Mason's due process rights because their statements would not constitute exculpatory evidence. *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992) (due process only requires production of "exculpatory" evidence). Exculpatory in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). While Mason has a right to

13

present relevant, exculpatory evidence in his defense, Mangold's and Hix's interview statements do not exonerate him of any of the charged offenses. The court has reviewed the confidential case file and finds it does not contain any exculpatory evidence. *Jeffries v. Neal*, 737 F. App'x 791, 793 (7th Cir. 2018) ("our review of the internal-affairs file confirms that it contains no evidence contradicting the hearing officer's conclusion that Jeffries trafficked drugs.").

Furthermore, a hearing officer's improper exclusion of evidence will be deemed harmless unless there is some indication from the record that the evidence "might have aided [the prisoner's] defense." *Piggie*, 342 F.3d at 666. Here, Mason has not identified anything from either of these witnesses that would prove to be exculpatory or that might have aided his defense. With respect to Hix, Mason requested his statement because Hix would have stated that Mangold hit Hix and Mason with a sharp-edged broom handle. ECF 1 at 2. However, this testimony would not have made any difference because, while Mangold did wield a broom handle during the assault, the video footage showed Mason picking Hix up off of his feet and slamming his body into the floor. ECF 12-1 at 1. While Mason has not stated a reason for why he requested a statement from Mangold, the conduct report establishes Mason and two other offenders assaulted Mangold at 8:41 p.m. on July 16, 2016. ECF 12-9 at 1. Thus, even if the hearing officer improperly excluded these witnesses, it would have been harmless error. Therefore, Mason has not identified a basis for granting habeas corpus relief.

**(3)** *Confidential Case File*

To the extent Mason may claim his due process rights were violated because he was denied the right to review the confidential case file, that contention fails. ECF 12-10 at 1. While Mason had a right to request evidence in his defense, *see Wolff*, 418 U.S. at 566, he did not necessarily have a right to personally review that evidence. *See White*, 266 F.3d at 767 ("prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public . . . ."). Here, Mason did not have a right to review the confidential case file because the release of the file would have given Mason and other offenders crucial, sensitive information about the details of the investigation as well as insight into the surveillance techniques used by prison investigators. Furthermore, I have reviewed the file and find it is reliable and appropriately withheld from Mason.

If Mason wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court of Cook Cnty. Ill.*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma pauperis on appeal because pursuant to 28 U.S.C. § 1915(a)(3), an appeal in this case could not be taken in good faith.

For these reasons, Jamar Mason's petition for writ of habeas corpus is DENIED. The clerk is DIRECTED to close this case.

ENTERED: January 23, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT